IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:22-CV-403-RJ

| | |
|---|---|
| GLOIS KAYE TYNDALL,<br><br>    Plaintiff/Claimant,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | O R D E R |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-16, -20] pursuant to Fed. R. Civ. P. 12(c). Claimant Glois Kaye Tyndall ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant filed a response to Defendant's motion, [DE-22], the time for filing further responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and this matter is remanded for further proceedings.

### I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on January 29, 2020, alleging disability beginning June 18, 2019.[1] (R. 15, 212–18). The claim was denied

---

[1] At the administrative hearing, Claimant's counsel stated they would amend the onset date to January 21, 2020, but it does not appear that such an amendment was filed in the administrative record.

initially and upon reconsideration. (R. 15, 78–113). A hearing before an Administrative Law Judge ("ALJ") was held on October 25, 2021, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 30–59). On December 15, 2021, the ALJ issued a decision denying Claimant's request for benefits. (R. 12–29). On August 8, 2022, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her

findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred by (1) failing to fully account for limitations stemming from her lower extremity impairments and (2) failing to perform a full analysis of her

3

symptoms, including pain, that permits meaningful judicial review. Pl.'s Mem. [DE-17] at 14–18.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 17). Next, the ALJ determined Claimant had the severe impairments of osteoarthritis of the bilateral hands and bilateral knees; low back pain and degenerative disc disease of the lumbar region, status-post fusion; end-stage right hip osteoarthritis; diabetes; peripheral neuropathy; hypertension; and morbid obesity. *Id.* Claimant's adjustment disorder mixed with anxiety and depression and PTSD were deemed non-severe. (R. 18). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18–20). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in a mild limitations in adapting or managing oneself; understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (R. 18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] with the following additional limitations:

> she must be able to alternate position up to twice per hour, regardless of whether she is sitting, standing, or walking. She can remain on task in all positions and during all transitions. She can frequently operate foot controls, push, and pull with the bilateral lower extremities. She can frequently push, pull, operate hand controls,

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

handle, and finger with the bilateral hands. She can occasionally climb, balance, stoop, kneel[,] crouch, and crawl. She must avoid concentrated exposure to unprotected heights and moving mechanical parts. She can occasionally operate a motor vehicle, so long as she can alternate position up to twice per hour.

(R. 20–24). In making this assessment, the ALJ found Claimant's statements about her symptoms and limitations to be not entirely consistent with the medical and other evidence in the record. (R. 21). At step four, the ALJ concluded Claimant could perform the requirements of her past relevant work as an accounts payable clerk and storage facility rental clerk. (R. 24).

## V. DISCUSSION

Claimant contends that the record is consistent with her description of greater limitations than the ALJ accounted for in the RFC, and the ALJ failed to sufficiently discuss the intensity and persistence of her symptoms under 20 C.F.R. § 404.1529(c), while improperly emphasizing a lack of objective evidence to support a disability finding. Pl.'s Mem. [DE-17] at 13–18. Defendant contends substantial evidence supports the ALJ's finding that Claimant has the RFC to perform a reduced range of light work. Def.'s Mem. [DE-21] at 6–19.

"[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing

5

that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 16-3p, 2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors concerning the "intensity, persistence and limiting effects" of the claimant's symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c)(3) (showing a complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig*, 76 F.3d at 595–96, but neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." S.S.R. 16-3p, 2016 WL 1119029, at *6; *see Ladda v. Berryhill*, 749 F. App'x 166, 171 (4th Cir. 2018) ("The ALJ cannot 'reject a claimant's statements about the intensity and persistence of . . . pain or other symptoms' or about the effect of those symptoms on a claimant's ability to work 'solely because the available objective medical evidence does not substantiate them.'") (quoting

6

20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)); *Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

The Fourth Circuit has repeatedly held that "[o]bjective evidence is not required" at the second step of the analysis assessing the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work. *Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (citing *Arakas*, 983 F. 3d 83, 95 (4th Cir. 2020)). Therefore, "[b]ecause a claimant is entitled to 'rely exclusively on subjective evidence to prove that [his] symptoms [are] so continuous and/or severe that they prevented [him] from working,' an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'" *Id.* (citing Arakas, 983 F. 3d at 96).[3]

In this case, the ALJ failed to sufficiently consider Claimant's subjective statements regarding the intensity and persistence of her pain. Claimant testified at the administrative hearing regarding the pain and limiting effects of her lower extremity impairments. She experiences knee, hip, and back problems for which she receives injections. (R. 38–39). Claimant testified that it is painful for her to walk, sit, or stand for any amount of time. (R. 39). Claimant's lower back pain radiates to her left leg. (R. 41). She tried physical therapy but it was too painful, and she is treated with pain medication and injections. (R. 41–42). Claimant's doctor has discussed back surgery,

---

[3] Defendant argues that Claimant "overreads" *Arakas* and distinguishes this case because Claimant does not have fibromyalgia or a similar illness that eludes objective medical testing. Def.'s Mem. [DE-21] at 12–13. However, the Fourth Circuit in *Oakes*, where the claimant suffered from hypertension, gout, arthritis, and back pain with bilateral sciatica, liberally cited *Arakas* and reiterated that "[d]espite a history of pushback on subjective-statement reliance by the SSA, this Court allows a claimant to rely exclusively on subjective evidence in proving the second part of the test." *Oakes*, 70 F.4th at 215. The court in *Oakes* found that the ALJ failed to adequately consider the claimant's subjective complaints, observing that "the ALJ never addressed the fact that disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain." *Id.*

7

but Claimant had a prior back surgery that was so painful she is trying to wait as long as possible before undergoing another surgery. (R. 42). Claimant's pain is exacerbated by activities such as washing dishes, which requires her to lean over the sink because she cannot stand up straight. *Id.* Claimant also receives injections in her right hip every three months, and the hip pain affects the way she walks and makes it difficult to sit. *Id.* She uses ice and heat treatments, and she is taking gabapentin for pain along with a muscle relaxer at night. (R. 43). Claimant was told she would eventually need both hips replaced. *Id.* Claimant also experiences bilateral knee pain, worse on the left due to osteoarthritis and bursitis. *Id.* She had a nerve block that provided no relief, but still receives injections and has fluid drawn off, and she has been told she will need a knee replacement. (R. 43–44). Claimant changes positions about every ten minutes due to her hip pain, she cannot stand for long periods of time, shifting from hip to hip before needing to sit, and she spends a lot of time lying down with a heating pad or ice pack. (R. 44). Claimant also has difficulty walking due to her knees and cannot climb stairs. *Id.* When Claimant's injections wear off she utilizes a cane or walker to prevent falls until she can get another injection. (R. 44–45).

The ALJ determined that while Claimant's impairments could reasonably be expected to cause her alleged symptoms, Claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence. (R. 21). Specifically, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent because "the objective findings . . . fail to provide strong support for the claimant's allegations of disabling symptoms and limitations . . . ." *Id.*

First, the ALJ discussed very little of Claimant's testimony from the administrative hearing in the RFC analysis. *See Moore v. Kijakazi*, No. 5:20-CV-627-RJ, 2022 WL 834295, at *4

(E.D.N.C. Mar. 21, 2022) (finding absence of discussion of the claimant's administrative hearing testimony regarding a contested function prevented meaningful review). Claimant testified to having greater limitations than the ALJ found in the RFC. While the ALJ is not required to discuss every piece of evidence, *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014), the ALJ should have explained how Claimant's hearing testimony was evaluated because it was relevant to a contested function, i.e., her ability to walk consistent with the requirements of light work given her allegations of pain in her lower extremities. *See Mascio*, 780 F.3d at 640 (finding error where the ALJ failed to provide a proper explanation of how he decided which of the claimant's statements to believe and which to discredit); *Alexander v. Berryhill*, No. 5:17-CV-362-D, 2018 WL 3433292, at *9 (E.D.N.C. June 18, 2018) (finding the ALJ erred by failing to discuss relevant evidence favorable to the claimant, including her testimony regarding how her impairments impacted her functioning), *report and recommendation adopted,* 2018 WL 3430675 (E.D.N.C. July 16, 2018).

The ALJ also failed to discuss Claimant's testimony or other evidence about her limited ability to engage in activities of daily living. (R. 42, 247–54); 20 C.F.R. § 404.1529(c)(3)(i) (listing "daily activities" as a factor relevant to a claimant's symptoms, such as pain, that the ALJ will consider); S.S.R. 16-3p, 2017 WL 5180304, at *7. The ALJ did acknowledge Claimant's testimony that she used a cane or walker as the date for her next injection approached and the effects of the prior injection wore off. (R. 21). Yet, the ALJ made no provision in the RFC for intermittent use of a cane or walker, so it is not clear whether the ALJ credited that testimony, which appears consistent with the waxing and waning of Claimant's pain discussed below. The ALJ is required to consider a claimant's statements about her symptoms, 20 C.F.R. § 404.1529(a), S.S.R. 16-3p, and the ALJ's failure to explain how he evaluated Claimant's statements hampers

9

the court's ability to conduct a meaningful review.

Next, the ALJ impermissibly cherrypicked the evidence in discussing the treatment notes and Claimant's reports of pain to her doctors. The ALJ discussed Claimant's treatment of knee and hip pain in May 2020, that she received a nerve block for her left knee that gave her relief, and that she only needed to use a cane or walker toward the end of the three-month period between injections. (R. 21). The ALJ found this "consistent with medical evidence of record indicating partial relief and pain levels from 2-6/10." *Id.* (internal citation omitted). The ALJ also found that although Claimant was treated for knee, back, and right hip pain, her pain levels were never more than moderate (6/10), and she was most often seen with a normal gait and no assistive device. (R. 22). The ALJ cited treatment notes indicating Claimant's pain level was only 2/10 in January 2021, it was 0/10 post-VAS procedure in February 2021, it was mild-moderate and improved 40% with an injection in July 2021, and her knee pain went from 3/10 to 100% improvement after an injection in August 2021. *Id.* Contrary to the ALJ's findings, there is evidence in the record that Claimant's pain was often times moderate-severe and greater than 6/10, the injections provided only temporary relief, and she frequently demonstrated an antalgic gate.

For example, in June 2020, Claimant reported the pain in her lumbar spine was moderate-severe, currently 6/10 but 10/10 at worst, and her symptoms were aggravated by, among other things, daily activities and walking. (R. 531). Claimant received a right side piriformis/sciatic nerve block, which resolved her right side radiating back pain, but she continued to experience radiating pain on the left side after an SI joint injection, and her gait remained antalgic. (R. 527). Claimant also reported in July 2020 that her right hip pain was worsening, her symptoms were moderate-severe, her current pain was 7/10 but 10/10 at worst, she was experiencing difficulty initiating sleep and decreased mobility, and her gait was antalgic and limping. (R. 523, 526).

10

Claimant received a left side piriformis/sciatic nerve block in August 2020, which provided immediate relief. (R. 515). Left genicular nerve blocks were administered in September 2020 and October 2020, providing 50% improvement for 3–4 days and 65% improvement for seven days, respectively. (R. 577). Claimant then had a left knee ablation in November 2020, which temporarily helped her pain, but in December 2020, her knee pain was 7/10; it was aggravated by daily activities, standing, and walking; her gait was antalgic and limping; and her doctor described her pain as "mechanical pain due to degenerative joint disease" and scheduled her for another injection. (R. 640, 643–44). Treatment records from throughout 2021 demonstrate that Claimant continued receiving regular injections for her back, hip, and knee pain, which fluctuated from mild to severe; her pain was aggravated by activity; and her gait continued to be noted as antalgic. (R. 769–821).

The ALJ's analysis paints an incomplete picture by only citing evidence demonstrating improvement in Claimant's pain and ignoring evidence showing her pain improved after injections only to increase again. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.") (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *Lockerby v. Saul*, No. 1:19-CV-00159-MOC, 2020 WL 506752, at *3 (W.D.N.C. Jan. 30, 2020) ("An accurate and logical bridge must consider both favorable and unfavorable evidence"); *Jerome S. v. Kijakazi*, No. CV AAQ-22-02963, 2023 WL 5570201, at *4 (D. Md. Aug. 29, 2023) (finding ALJ erred by ignoring evidence regarding the severity of the plaintiff's pain) (citing S.S.R. 16-3p, 2016 WL 1119029, at *8 ("[I]nconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in their intensity, persistence, and functional effects, or

may worsen or improve with time."); *Arakas*, 983 F.3d at 99 (indicating that the ALJ erred in concluding that the plaintiff's symptoms were moderate "while omitting any mention of . . . various treatment notes from the relevant period indicating [the plaintiff]'s severe or worsening pain and fatigue")). The ALJ failed to properly analyze Claimant's subjective complaints of pain and cherrypicked the medical records, and these errors prevent the court from conducting a meaningful review of the decision. *See Montgomery v. Kijakazi*, No. CV 0:21-3074-JD-PJG, 2022 WL 17853557, at *6 (D.S.C. Oct. 26, 2022) ("[S]elective summary of Plaintiff's allegations and of the medical records, followed by a cursory conclusion that her allegations are not fully consistent with the medical records is simply insufficient to satisfy the ALJ's duties and permit meaningful review of the decision."), *report and recommendation adopted sub nom. Wanda M. v. Kijakazi*, 2022 WL 17852614 (D.S.C. Dec. 22, 2022). Accordingly, this case is remanded for further proceedings consistent with this order.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-16] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-20] is DENIED, and the matter is REMANDED to the Acting Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this order.

SO ORDERED, this the __31__ day of October 2023.

Robert B. Jones, Jr.
United States Magistrate Judge